**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NO. 23-CR-62- OAW |
| | ) |
| WILLIS TAYLOR ET AL. | ) |
| | ) |

**ORDER DISPOSING OF MOTIONS IN LIMINE**

The parties submitted several motions in limine seeking to admit or to exclude evidence ahead of trial in this matter. The court hereby disposes of the following motions consistent with its rulings as detailed herein.

**I. Agent Kerwick's Expert Testimony Regarding Drug Matters**

The court hereby supplements its discussion from the pretrial conference with additional articulation such that the parties might prepare for Agent Kerwick's testimony.

The government moves in limine to admit DEA Agent John J. Kerwick's expert testimony regarding "common practices in drug distribution, including common language and vernacular used by drug traffickers; typical quantities and prices for distribution of narcotics; common practices in the distribution of narcotics; and the utility of certain items… to further drug trafficking operations." ECF No. 951, pg. 38. Defendants Lauria and Pappas, the latter through his own motion in limine (ECF No. 904) and response, object to permitting Agent Kerwick to testify as an expert.

Rule 702 permits a qualified expert to testify if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," the testimony reflects a reliable application of reliable principles and methods that themselves are based on sufficient facts or data. Fed. R. Evid. 702(a).

1

Mr. Pappas argues that the government has not made a sufficient showing to establish Agent Kerwick as an expert, but Rule 702 does not minimize expertise stemming from experience.[1] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *United States v. Roach*, 644 F.3d 763, 764 (8th Cir. 2011) ("Rule 702 does not rank academic training over demonstrated practical experience."), *Satcher v. Honda Motor Co.*, 52 F.3d 1311 (5th Cir. 1995) (permitting Miami police chief to testify that motorcycle crash guards effectively reduce injuries notwithstanding the fact the witness had no scientific or engineering expertise in motorcycle design). Agent Kerwick's background includes seven years of experience as a Task Force Officer in the DEA and 16 years in law enforcement. ECF No. 951 at 40. He has extensive experience investigating narcotics organizations, including "practices and methods employed in the distribution of narcotics," "Title III wire interception investigations," and "hundreds of controlled purchases of narcotics;" he "served as the case agent in numerous multi-defendant narcotics investigations," and "listened to thousands of wiretapped calls relating to narcotics trafficking and become familiar with the common practices and methodologies of narcotics traffickers." His experience exemplifies why DEA agents are "well-suited" to offer expert testimony about coded narcotics terminology. *United States v. Simmons*, 923 F.2d 934, 946 (2d Cir. 1991); *see United States v. Haines*, 803 F.3d 713, 727–728 (5th Cir. 2015) (finding DEA agent qualified to testify as expert regarding drug code because agent had years of

---

[1] That is not to say that Agent Kerwick does not also possess academic and/or formal training; rather, it seems evidently clear from Agent Kerwick's background and experience that he is well-qualified to testify as an expert on the subject matter so described.

experience as drug investigator, including as lead investigator and had listened to thousands of calls over the course of his career).

Mr. Pappas next argues that Agent Kerwick's testimony does not fall under the auspices of expert testimony. "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008). "A district court's discretion to admit expert testimony is controlled by Rules 702, 703, and 403 of the Federal Rules of Evidence." *United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2002).

Courts within the Second Circuit routinely admit expert testimony regarding narcotics jargon. Even the advisory committee notes to Rule 702 contemplate that expert testimony regarding drug terminology will be admitted if it meets the other Rule 702 requirements. Fed. R. Evid. 702 adv. cmte. Notes (2000) ("[W]hen a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. . .this type of testimony should be admitted"). Further, the operations of narcotics dealers are a proper subject for expert testimony. *United States v. McCloud*, No. 07-cr-2242, 303 Fed. Appx. 916, 918 (2d Cir. 2008) (summary order) (citing *Mejia*, 545 F.3d 179, 191 and *Dukagjini*, 326 F.3d at 52), *United States v. Kusek*, 844 F.2d 942, 949 (2d Cir. 1988). For example, "[t]estimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror." *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994). Therefore, Mr. Pappas's contention that drug code and common practices in drug distribution are not proper subjects for expert testimony is without merit.

However, Agent Kerwick will be prohibited from explaining commonly understood phrases. *See United States v. Cruz*, 363 F.3d 187 (2d Cir. 2004) (holding police officer's testimony deciphering drug jargon could be helpful to the jury, but testimony as to the meaning of phrases such as "watch someone's back" is neither "code nor esoteric"); *see also United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991) (holding testimony that drug dealers force buyers to use drugs at gunpoint in order to weed out undercover officers was unhelpful to jurors who would understand that to be the case).

The remaining questions posed by Mr. Pappas in his motion in limine (ECF No. 904) and in his response to the government's motion are fodder for cross-examination and implicate the weight of the evidence, not its admissibility.

That said, the court will reserve its final ruling until trial such that the defendants may voir dire Agent Kerwick, but the court issues this opinion such that the defendants understand the court is likely to grant the government's motion to admit his testimony.

### II. Government's Remaining Motions in its First Set of Motions in Limine

The court reserves decision on the government's remaining motions in limine until a later time, though they seem admissible as generally described.[2]

### III. Government's Second Set of Motions in Limine (ECF No. 1161)

#### A. Testimony of Erica Reshard (No. 11)

The government's objection to the testimony of Erica Reshard is well taken but overruled. Erica Reshard will be permitted to testify so long as she otherwise qualifies under the Federal Rules of Evidence governing expert testimony. The government will

---

[2] For clarity, those are items Nos. 2, 6, 7, and 10.

be permitted to find its own expert (if deemed necessary) and to present their testimony in rebuttal given Mr. Pappas's belated disclosure.[3]

### B. Mr. Gumbs's Criminal History (No. 12)

The government submitted its motion to apprise the court (and Mr. Gumbs) that his criminal record will be introduced into evidence absent a stipulation of Mr. Gumbs's criminal record. The court appreciates the government's notice and notes for clarity of the record that the government is not seeking to admit the document through its motion; rather, it is simply identifying this issue in advance. Therefore, to the extent it is construed as a motion to admit the document, it is denied but may be renewed at trial.

### C. Self-Authenticating Documents (No. 13)

The government notifies the court that it intends to offer into evidence certain self-authenticating exhibits. The motion is granted insofar as the government establishes the relevance of these records. Should it demonstrate relevance, the government will be permitted to authenticate them pursuant to Federal Rule of Evidence 902. *United States v. Weingarten*, No. 19-cr-497 (NSR), 2024 WL 677995, 2024 U.S. Dist. LEXIS 24138, *39-41 (S.D.N.Y. Feb. 12, 2024) (as amended).

### D. Use of Defendant Gumbs's Admissions (No. 15)

Throughout this case, the court has warned Defendants Gumbs and Pappas about the perils of self-representation and has provided for accommodations to enable them to proceed *pro se*.

---

[3] Should the government decide to utilize an expert, Mr. Pappas may need to submit to evaluation as well pursuant to *United States v. McSherry*, 226 F.3d 153, 155 (2d Cir. 2000) (ruling that Defendant's "use of his own experts at trial would be conditioned upon [his] submitting himself to an independent psychiatric examination by prosecution experts.").

Statements made by Mr. Gumbs are admissible under the party opponent rule, Fed. R. Evid. 801(d), though the court reserves final decision out of an abundance of caution. Still, admissibility is likely based on the government's representations.

### E. Government's Remaining Motions in its Second Set of Motions in Limine

The court reserves decision on the government's remaining motions in limine until a later time.[4]

## IV. Mr. Gumbs's Motions in Limine

### A. Exclude Exhibit 95 (ECF No. 932)

Mr. Gumbs seeks to preclude the government from introducing what the government calls "white binding items" seized from his home during execution of a search warrant into evidence.[5] He cites neither a rule of evidence nor a case in support, but he seems to argue that introducing the physical exhibit would confuse the jury because there is no chemical analysis confirming it is binding agent. The points made by Mr. Gumbs may be raised through cross-examination and closing arguments in challenging the weight of the evidence, but the court finds that the exhibit is admissible under Rule 404 of the Federal Rules of Evidence as "highly probative of his knowledge and intent," *see United States v. Abreu*, 2023 WL 8270427 at *2 (2d Cir. 2023) (referring to the effect of drug paraphernalia); *see also United States v. Willis*, 14 F.4th 170, 184 (2d Cir. 2021) (mentioning the admissibility of "cutting agents" at trial). The jury may make reasonable inferences about the exhibit based upon its location, packaging, and surrounding items.

### B. Miscellaneous Matters (ECF No. 986)

---

[4] For clarity, those are items Nos. 14 and 16, ECF No. 1161.
[5] The binding item appears on the government's revised exhibit list as exhibit 34. ECF No. 1129.

6

The court denies Mr. Gumbs's *response* to the government's omnibus motion (ECF No. 951) insofar as it is filed as a motion and seeks independent relief.[6]

### C. Motions to Adopt (ECF Nos. 910-919)

The court will address Mr. Gumbs's motions to adopt while ruling upon the motions in limine filed by Mr. Pappas.

## V. Defendant Pappas's Motions in Limine

### A. Evidence Allegedly Improperly and Untimely Disclosed (ECF No. 897)

It was established at the discovery conference on January 6, 2025, that any materials still sought by Mr. Pappas either do not exist, have been turned over to him, or would be turned over to him shortly thereafter. The court provided Mr. Pappas accommodations to review discovery, and it is worth mentioning that he did not accept the court's offer to seek extra time to review discovery until about one month after the offer was extended through the docket. *See* ECF Nos. 1047 (November 13, 2024); 1144 (December 17, 2024).

Further, it has become clear that Mr. Pappas's relatively recent procurement of a laptop rectified certain discovery issues.[7] On May 14, 2024, almost six months before Mr. Pappas obtained his laptop, the court mentioned that Mr. Pappas ought to consider purchasing a laptop with CJA budgeted funds. ECF No. 520 ("[T]he court is aware of a program established by the United States Court of Appeals for the Second Circuit through

---

[6] Mr. Gumbs is reminded (as he was at the discovery conference on January 6, 2025, as to ECF No. 1070) that filing a "response" to another docket entry is different from filing a "motion." To the extent he seeks relief independent from that of the entry to which he responds, he should file a *separate* motion.

[7] For example, the government produced (and reproduced) Cellebrite data to Defendant Pappas. At the November 7, 2024, discovery conference, he reported that he could not open the Cellebrite data, and the government undertook a significant and time-consuming endeavor to reduce all the Cellebrite data into PDFs for Mr. Pappas's viewing at Wyatt Detention Center. Upon procuring his laptop, he simply requested at the discovery conference on January 6, 2025, that the government reproduce the Cellebrite data as it had been originally provided.

7

which counsel appointed via the Criminal Justice Act…may use budgeted funds to purchase a laptop in order to assist an incarcerated defendant in accessing voluminous discoverable materials, though such laptop remains government property.  This appears to have been the mechanism which allowed for the laptop to have been provided in the *Pulliam* case mentioned by the government…[t]hrough standby counsel, Defendant Pappas is free to explore his eligibility for use of a laptop by way of that program.").  Despite the court's suggestion, Mr. Pappas only did so much later in the case.

Mr. Pappas's own unexplained delays in adopting the court's suggestions contributed to his sense of urgency, his alleged discovery "discrepancies," and the lapses he has cited throughout the docket.  The court will not exclude evidence on that basis.  The motion is denied, though he remains free to represent at trial that he still, by that time, has not received certain evidence that should be excluded on that basis.

### B.  Altering or Expanding the Theory of Prosecution Allowed (ECF No. 898)

Mr. Pappas moves to "exclude all evidence that alters or expands the theory of prosecution."  His motion is denied.  As a preliminary matter, except in response to certain of Mr. Pappas's motions, the government has not had an opportunity to disclose its theory of the case.  Regardless, it is not obligated to "preview its case or expose its legal theory." *United States v. LaMorte*, 744 F. Supp. 573 (S.D.N.Y. 1990), *United States v. Leonelli*, 428 F. Supp. 880 (S.D.N.Y. 1977).  Indeed, this motion may be an attempt to cause the government to disclose its strategy.  Whereas Mr. Pappas seeks to exclude strategy of which he has not been notified, he also concedes that he does not know the government's trial strategy.  *See* ECF No. 906 at 2 ("In this case there has not yet been a coherent presentation or explanation as to the formation of the alleged conspiracies, the precise

nature of the jointly undertaken activity, [Mr. Pappas's] specific role, or any information as to the agreement element that is essential to all conspiracy charges"). The court will not preclude the government from proving its theory of the case when it is not obligated to disclose the same.

Defendant Pappas's motion also fails because he does not identify any particular piece of evidence for exclusion with specificity such that the court could craft an order if it decided such a ruling was necessary. The motion is denied.

### C. General Motion to Exclude Evidence Based on Speculation (ECF No. 900)

Questions calling for testimony based on mere speculation are subject to objection at trial. Accordingly, the motion is denied subject to renewal.

### D. Pretrial Detention Communication and Derivative Evidence (ECF No. 902)

"[A]lthough pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment, the maintenance of prison security and the preservation of institutional order and discipline are 'essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.'" *United States v. Willoughby*, 860 F.2d 15, 21 (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)). "Accordingly, where a facility provides some notice to inmates that calls may be monitored, the facility's practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees." *United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002).

Considering well-established case law, Mr. Pappas's arguments are unavailing. He does not claim a lack of notice that such calls might be recorded. Instead, he argues

that the government pursued his pretrial detention to ascertain additional evidence against him to be used in his prosecution. In so doing, he conveniently fails to even mention his flight from police which consistently has served as an integral basis for findings throughout the docket that he remains a flight risk. Thus, his citation to *Cohen* is inapposite. The motion is denied.

### E. Motion to Preclude Expert Testimony of Agent Kerwick (ECF No. 904)

For the reasons articulated previously, Defendant's motion is denied.

### F. Attempt to Limit Reference to Quantity of Drugs (ECF No. 905)

The motion is denied for the reasons articulated in the government's response.

### G. Request to Preclude Government From Piling Inferences (ECF No. 906)

In another vague motion, Mr. Pappas asks the court to prevent the government from "piling inferences to provoke a wrongful jury verdict," though he offers no guidance as to the specific evidence or anticipated line of testimony he asks to be excluded. *See* ECF No. 906 at 2. Therefore, the general motion is denied. However, the court reminds Mr. Pappas of a principle mentioned within a case he cites: the quantity of proof required to satisfy the knowledge element of a crime can be impacted by the illegal nature of substances being dealt, as explained in *Direct Sales Co. vs. U.S.*, 319 U.S. 703 (1943), a case charging a registered drug manufacturer and wholesaler with participation in a drug conspiracy related to pharmaceutical sales to a physician.

## VI. Defendant Echevarria's Motions in Limine (ECF No. 966)

### A. Gang Evidence (No. 1)

The court grants the motion insofar as it relates to evidence of gang affiliation. *See* ECF No. 1104. However, as to nicknames and other identifying characteristics he argues

might constitute "prejudicial evidence," generally, he does not offer any guidance as to which nicknames he so references or support why they might be deemed prejudicial. Further, Mr. Echevarria has not docketed any stipulation to identification which might render unnecessary any witness's reference to such nicknames in explaining the context of any intercepted communications. For example, if the transcript of a wiretap references defendants only by their nicknames, the government arguably could have to elicit testimony tying those nicknames to certain individuals absent the type of stipulation that Mr. Echevarria would concede a particular reference was to him. The government has a burden of proof to attempt to satisfy, and the defendant may well deny that certain communications reference him. Absent the type of stipulation that might obviate the need for an explanation to the jury, the portion of the motion related to nicknames is denied. The remainder of the motion is denied for any level of specificity that might aid the court in even identifying the evidence Mr. Echevarria asks to be excluded.

    B.  <u>Motion as to Law Enforcement Generalizations, Generally (No. 2)</u>

The motion is denied for a similar utter lack of specificity or legal support.

    C.  <u>Generalizations Regarding the Magnitude of the Crime (No. 3)</u>

Again, lacking in specificity or legal support, this motion is denied.

    D.  <u>Expert Testimony (No. 4)</u>

The legal standard for expert testimony will be followed, thus the motion as to "unusual" and other testimony inconsistent with such standard is denied as moot.

    E.  <u>Other Bad Acts (No. 5)</u>

The motion is denied for the lack of specificity noted by the government.

### F. <u>Prior Convictions (No. 6)</u>

The motion is denied insofar as the government states that it does not intend to introduce in its case-in-chief any evidence regarding Mr. Echevarria's criminal record, and that it only will seek to offer such evidence if Mr. Echevarria opens to door to doing so. Thus, the motion is denied as moot.

**IT IS SO ORDERED** in Hartford, Connecticut, this 20th day of January, 2025.

```
              /s/
```
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE